UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **CAROL SMITH,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 7:13-CV-00844-RDP |
| } | |
| **SCHWAN'S FOOD SERVICE, et al.** } | |
| } | |
| **Defendants.** } | |

**MEMORANDUM OPINION**

This matter is before the court on Defendants' Motion for Partial Summary Judgment (Doc. # 26). The Motion has been fully briefed. (Docs. # 26, 27, and 28).

This case arises out of an accident occurring while Plaintiff Carol Smith was riding her bicycle and Tamiko Harris was operating a commercial vehicle in the course of his employment with Defendant Schwan's Home Service, Inc. The accident occurred when Harris turned his truck to the left and pulled into the path of Plaintiff's bicycle. To avoid Harris's vehicle, Plaintiff steered her bike to the right, which caused her to strike the curb and that resulted in injuries to Plaintiff.

After a careful review of Defendants' Motion for Summary Judgment (Doc. # 26), along with the briefs and submission filed in conjunction with it (Docs. # 26, 27 & 28), and for the reasons outlined in this opinion, the court concludes that Defendants' Motion is due to be granted in part and denied in part.

**I.     Summary of Relevant Facts[1]**

Plaintiff was injured on May 31, 2011 while riding her bicycle on Bradford Boulevard in Tuscaloosa, Alabama. (Doc. # 26 at ¶ 1). The accident occurred when a commercial refrigerated truck driven by Tamiko Harris turned left onto Bradford Boulevard and into the path of Plaintiff's bicycle. (Doc. # 26 at ¶ 4; Doc. # 27-5 at p. 24). Plaintiff steered to the right to avoid hitting the back of the truck, and that caused her to strike the curb. This resulted in injuries to Plaintiff. (Doc. # 27 at ¶ 7; Doc. # 27-5 at 15). The only other eyewitness to the accident was Kristen Hubbard, who was driving on Bradford Boulevard behind Plaintiff's bicycle. (Doc # 27 at ¶ 5).

Just before the accident, Harris was driving the truck on Covington Lane and approaching a stop sign at the intersection of Covington Lane and Bradford Boulevard. (Doc. # 27-5 at 24; Doc. # 27-6 at 45). Hubbard does not know how fast the truck was travelling as it approached the stop sign at the intersection, but Plaintiff testified that the truck was travelling at least 20 mph. (Doc. # 27-5 at 24; Doc. # 27-6 at 51-52). Although the truck slowed as it approached the intersection, Harris did not stop fully at the stop sign before turning left onto Bradford Boulevard. (Doc. # 27-5 at 15, 30; Doc. # 27-6 at 39). Hubbard testified that Harris looked left and right at the intersection of Covington Lane and Bradford Boulevard before rolling through the stop sign and turning on to Bradford Boulevard. (Doc. # 27-5 at 30-31). Harris accelerated and turned onto Bradford Boulevard with enough speed to cause the weight of the truck to shift or tilt as he made the turn. (Doc. # 27-5 at 15, 31-32, 52; Doc. # 27-6 at 39). When Harris

---

[1] If facts are in dispute, they are stated in the manner most favorable to the non-movant, and all reasonable doubts about the facts have been resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox. v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994).

turned the truck onto Bradford Boulevard, the back of the truck came close enough to Plaintiff on her bicycle that she could have reached out and touched it.  (Doc. # 27-6 at 55).  Plaintiff was injured when she struck the curb to avoid hitting the truck.  (Doc. # 27-6 at 57).  Harris did not stop the truck after the accident, but continued driving down Bradford Boulevard at a normal speed.  (Doc. # 26-5 at 38-39).

Harris testified that he does not remember the accident.  (Doc. # 27-1 at 70-71).  Harris also testified that he did not run a stop sign and did not see Plaintiff on Bradford Boulevard.  (Doc # 27-1 at 54, 58, 70, 71).  Neither Plaintiff nor Hubbard knows whether Harris saw Plaintiff on her bicycle before he turned on to Bradford.  (Doc # 26 at ¶ 11; Doc. # 27-5 at 15).  Hubbard testified, however, that she does not understand how Harris could not have seen Plaintiff on her bicycle because Plaintiff was peddling toward him, and was wearing colorful clothes and a helmet.  (Doc. # 27-5 at 36).

Bradford Boulevard is in the Woodland Forest neighborhood.  (Doc. # 27-6 at 39).  There is no sidewalk on Bradford where the accident occurred.  (Doc. # 27-6 at 57-58).  Plaintiff testified that Bradford Boulevard was frequented by cyclists, runners, and walkers.  (Doc. # 27-6 at 49).  Hubbard also testified that there were many people out running and walking when she drove through the Woodland Forest neighborhood, and that she had seen cyclists riding in the neighborhood.  (Doc. # 27-5 at 14, 44).  Harris was familiar with the Woodland Forest neighborhood and drove through it bi-weekly in the refrigerated truck.  (Doc. # 27-1 at 52).  Harris testified that the neighborhood was "always dead" when he drove through it.  (Id.).  Harris also testified that "[y]ou can't drive fast through a neighborhood" because "[y]ou don't know what is going to happen in that neighborhood" and that he knew to drive carefully through the Woodland Forest neighborhood.  (Doc. # 27-1 at 59; *See also*, Doc. # 27-1 at 66).

At the time of the accident, Harris was employed by Defendant Schwan's Home Service, Inc., ("Schwan's Home"). (Doc. # 26 at Exh. A, ¶ 6). Harris was driving the truck involved in the accident during the course of his employment with Schwan's Home. (Doc. # 27 at 9, ¶ 41). Harris stated in his deposition that Schwan's Home and Defendant Schwan's Food Service, Inc. ("Schwan's Food") are one company. (Doc. # 27-1 at 7). However, a corporate attorney for The Schwan Food Company, the parent company of Schwan's Home and Schwan's Food, attested that Harris was never employed by Schwan's Food and that Schwan's Food was not the owner of the refrigerated truck Harris was driving on the day of the accident. (Doc. # 26 at Exh. A, ¶¶ 3 & 6). Defendant Schwan's Sales Enterprises, Inc. was not a legal entity on the day of the accident. (Doc # 26 at ¶ 3 & Exh. A, ¶ 4).

Before hiring Harris as a driving salesman in February or March, 2011, Schwan's Home obtained a driving history report that showed that Harris had not been involved in any traffic accidents or received any citations for moving violations for the previous three years. (Doc. # 26 at ¶ 5; Doc. # 27-2 at 25). Schwan's Home also confirmed that Harris had a valid commercial driver's license and medical examiner's certificate before hiring him. (Doc. # 26 at ¶ 5; Doc # 27-2 at 133-34). After he was hired, Harris completed a road test administered by Schwan's Home. (Doc. # 26 at ¶ 6). Harris was not involved in any accidents between the date he was hired by Schwan's Home and the date of the accident at issue here, nor had he received any citations for moving violations during that time period. (Doc. # 26 at ¶ 7). In fact, Harris had not been involved any accidents at all prior to May 31, 2011. (Doc. # 27-1 at 86).

Months after the accident, Schwan's Home had concerns about Harris's sales performance. (Doc. # 27-1 at 24-26; Doc. # 27-8; Doc. # 27-9). Additionally, Harris had problems with the sequence of stops on his sales route. (Doc. # 27-1 at 43-44; Doc. # 27-2 at 41-

45, 104-105). Harris testified that Schwan's wanted him to run the route in a particular sequence and not take too long with his customers. (Doc. # 27-1 at 39-41). However, Harris also testified that he did not feel like he had to hurry between customers and that he was not going to rush with his customers or rush between stops on his route. (Doc. # 27-1 at 40 and 68).

On October 13, 2011—several months after the accident—and in response to a written warning about not following the Schwans's route sequence, Harris complained in writing to his supervisor about the condition of the trucks. (Doc. # 27-4). Additionally, Harris testified that he complained three or four time about the trucks breaking down because they were old. (Doc. # 27-1 at 35-36). However, Harris also testified that his complaints about the trucks were related to the refrigeration units on the trucks and that he had no complaints about the brakes or steering on the trucks. (Doc. # 27-1 at 36, 81-82). In fact, Harris testified that the Schwan's maintenance program was "topnotch." (Doc. # 27-1 at 37).

## II.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the Rule requires the non-moving party to go beyond the pleadings and—by pointing to affidavits, or depositions, answers to

interrogatories, and/or admissions on file—designate specific facts showing that there is a genuine issue for trial. *See id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be grated. *See id.*, at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc*. teaches, Rule 56(c) "does not allow the plaintiff to simply rest on [her] allegations made in the complaint; instead, as the party bearing the burden of proof of trial, [s]he must come forward with at least some evidence to support each element essential to [her] case at trial." *Anderson*, 477 U.S. at 252. "Mere allegations" made by a plaintiff are insufficient. *Id.*

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co*., 243 F. Supp.2d 1257, 1262 (D.Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so onesided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp.2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp.2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear … that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III. Analysis

Defendants have moved for summary judgment on the following claims: (1) the wantonness claim in Count I; (2) the negligent and wanton entrustment claim of Count II; (3) the negligent and wanton hiring, training, supervision and retention claim of Count III; (4) the negligent and wanton maintenance claims of Count VIII; and (5) all claims against Schwan's Sales and Schwan's Food.[2]  (Doc. # 26, p. 1).  Plaintiff does not oppose entry of summary judgment on the negligent and wanton entrustment claim of Count II, but does oppose the other relief sought in the motion.

---

[2]In their Motion for Partial Summary Judgement, Defendants list Plaintiff's claim for *prima facie negligence* among the claims included in their Motion. (Doc. # 26 at 1). However, Defendants' Memorandum Brief in Support of Motion for Partial Summary Judgment contains no discussion or argument regarding Plaintiff's *prima facie negligence* claim. (Id. at 4-16). Accordingly, it appears that Defendants have abandoned their motion for summary judgment as to that claim. At the very least, Defendants failed to meet their burden of establishing that there are no genuine issues of material fact regarding Plaintiff's *prima facie negligence* claim, and they are not entitled to summary judgment on Count V of Plaintiff's Amended Complaint.  *See* Fed. R. Civ. P. 56(a).

In their Memorandum Brief in Support of Motion for Partial Summary Judgment, Defendants note that Plaintiff asserts several counts in her Amended Complaint that are not recognized as separate claims under Alabama law.  (Doc. # 26 at n. 1).  Specifically, Defendants state that Plaintiff's counts for "failure to keep a lookout, *respondeat superior*, defective equipment, mental/physical condition of driver, violation of trucking regulations, and felonious injury [] are not, in and of themselves, recognized causes of action."  (*Id*.).  Defendants did not cite authority in support of that statement and have not moved for summary judgment on those counts.  Accordingly, the court does not rule on the validity or merits of those counts.  They will be addressed at the Pretrial Conference.

After a careful review of Defendants' Motion for Summary Judgment (Doc. # 26), along with the briefs and submission filed in conjunction with it (Docs. # 26, 27 & 28), and for the reasons outlined in this opinion, the court concludes there are genuine issues of material fact relating to Plaintiff's wantonness claim, but there are no genuine issues of material fact relating to: Plaintiff's claims for negligent and wanton entrustment; negligent and wanton hiring, supervision, training, and retention; negligent and wanton maintenance; and Plaintiff's claims against Defendants Schwan's Food Service, Inc. and Schwan's Sales Enterprises, Inc.  The court addresses each of these claims in turn.

### A.      Wantonness

Under Alabama law, wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result."[3] *Ex parte Essary*, 992 So.2d 5, 9 (Ala. 2007) (citing *Bozeman v. Central Bank of the South*, 646 So.2d 601 (Ala. 1994) (emphasis in original)). *See also* Ala. Code § 6–11–20(b)(3) (1975) (defining wantonness as "[c]onduct which is carried on with a reckless or conscious disregard for the rights or safety of others."). Alabama courts have repeatedly recognized that wantonness and negligence are qualitatively differently tort concepts[,]" and "wantonness is not merely a higher degree of culpability than negligence." *Ex parte Essary*, at 9 (quoting *Tolbert v. Tolbert*, 903 So.2d 103, 114-15 (Ala. 2004); *Mandella v. Pennington*, 73 So.3d 1257, 1264 (Ala. Civ. App. 2011) (citations omitted). Accordingly, in cases arising from car accidents, proving a driver's wantonness, "requires more than a showing of some form of inadvertence on the part of the driver; it requires a showing of

---

[3] An employer can be liable for the wanton acts of its employee if the employee's wanton acts were committed within the course and scope of his employment. *See Cheshire v. Putman*, 54 So.3d 336, 341 (Ala. 2010). Accordingly, the Defendants may be liable for Harris's wanton acts if, while they were committed, he was acting within the course and scope of his employment with Defendants.

some degree of conscious culpability." *Ex parte Anderson*, 682 So.2d 467, 469 (Ala. 1996) (citing *George v. Champion Ins. Co.*, 591 So.2d 582 (Ala. 1991)).

"The most crucial element of wantonness is knowledge, and while that element need not be shown by direct evidence it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference, ... it may not be left to the conjecture or speculation of the jury." *Roberts v. Brown*, 384 So.2d 1047, 1048 (Ala. 1980) (citations omitted). *See also Klaber by & through Klaber v. Elliott*, 533 So.2d 576, 579 (Ala. 1988) ("Knowledge need not be proven directly but may be inferred from the facts of the case."). Additionally, "'[t]o constitute wantonness, it is not necessary that the actor know that a person is within the zone made dangerous by his conduct; it is enough that he knows that a strong possibility exists that others may rightfully come within that zone.'" *Frederick v. Wallis*, 3 So.3d 904, 907 (Ala. 2008) (quoting *Ex parte Essary*, 992 So.2d at 9).

"Wantonness is a question of fact for the jury, unless there is a [] lack of [substantial] evidence from which the jury could reasonably infer wantonness." *Cash v. Caldwell*, 603 So.2d 1001, 1003 (Ala. 1992).[4] "Substantial evidence is 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" *Griffin v. Modular Transp. Co.*, 2014 WL 896627, *2 (N.D. Ala. Mar. 6, 2014) (quoting *Phillips ex rel. Phillips v. United Servs. Auto. Ass'n*, 988 So. 2d 464, 467 (Ala. 2008)). A court must carefully consider the facts of each particular case in order to determine if substantial evidence of wantonness exists. *Cheshire v. Putnam*, 54 So. 3d 336, 343 (Ala. 2010) (citing *Sellers v. Sexton*, 576 So. 2d 172, 175 (Ala. 1991)).

---

[4] The court has modified this quote to account for Rule 56's requirement that a claim must be supported by "substantial evidence."

For wantonness claims arising from a car accident and asserted against a driver, the Supreme Court of Alabama recognizes a rebuttable presumption against a finding of wantonness when the defendant's actions put both a defendant and a plaintiff at the same risk of injury. *See Essary*, 992 So.2d at 12 ("Absent some evidence of impaired judgment, … we do not expect an individual to engage in self-destructive behavior.") (citations omitted); *Roberts*, 384 So. 2d at 1050 ("There is a rebuttable presumption recognized by the law that every person in possession of his normal faculties in a situation known to be dangerous to himself, will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection."). In other words, Alabama courts recognize a presumption that a driver will not consciously do something that will likely result in injury to himself. *Griffin*, 2014 WL 896627, at * 3 (recognizing the "*Essary* presumption" and noting that "courts … will presume against wantonness when the risk of injury to the actor is as real as the risk of injury to others.").

Defendants seek summary judgment on Plaintiff's wantonness claim because, they argue, Plaintiff has presented no evidence that Harris consciously ran the stop sign with awareness that injury would likely result.  (Doc. # 26 at 9-11).  Defendants rely heavily on *Ex parte Essary* to support their motion for summary judgment as to Plaintiff's wantonness claim and argue that decision illustrates "the difficulty of proving a wantonness claim under Alabama law in the context of an automobile accident." (Doc. # 26 at 9; Doc. # 28 at 2). The presumption against a finding of wantonness that the Supreme Court of Alabama applied in *Ex parte Essary* does not apply in this case, however, because Harris's actions posed a much greater risk of injury to Plaintiff, who was riding a bicycle, than to Harris, who was driving a large commercial truck. *See Essary*, 992 So.2d at 12; *Griffin*, 2014 WL 896627, at * 4.  As a result, Plaintiff does not

have to rebut a presumption that Harris was not conscious that "rolling" the stop sign would likely result in injury in order to prove her claim for wantonness.

Plaintiff argues that the Rule 56 record precludes entry of summary judgment on her wantonness claim. (Doc. # 27 at 23). Plaintiff points to the follow evidence, among other things, to support her claim of wantonness against Defendants: (1) the truck Harris was driving did not stop at the stop sign; (2) Harris looked both ways at the intersection before rolling through the stop sign; (3) the truck turned so quickly onto Bradford that the truck's weight shifted; (4) Hubbard, a witness to the accident, does not know how Harris did not see Plaintiff on her bicycle because Plaintiff was wearing colorful clothes and a helmet; (5) Harris was familiar with the Woodland Forest neighborhood where the accident occurred; (6) Hubbard testified that there are a lot walkers, runners, and kids in the Woodland Forest neighborhood, and a lot of families in the neighborhood who use the roads and sidewalks on a daily basis; and (7) Harris testified that he would have known to drive carefully and safely through the neighborhood on the day of the accident.[5] (Doc. # 27 at 20-21; Doc. 27-5 at 36).

First, Plaintiff's and Hubbard's testimony that Harris ran the stop sign is sufficient to allow a jury to reasonably infer that Harris consciously ran the stop sign. Defendants argue that even if Harris consciously ran the stop sign they are still entitled to summary judgment on Plaintiff's wantonness claim because there is no evidence that Harris was conscious that an injury would likely result from his action. (Doc. # 26 at 8). Defendants assert that "the evidence is undisputed that Harris never saw the Plaintiff's bicycle on the day of the accident" and that Hubbard "assumed that [Harris] did not see the Plaintiff because he continued down Bradford

---

[5] Plaintiff also argues that there is evidence that fatigue could have been a factor in the accident, which precludes entry of summary judgment. (Doc. # 27 at 22-23). However, there is no substantial evidence to support a finding that Harris was fatigued on the day of the accident. (*See* Doc. # 27-1 at 22-23, 27-28; Doc. # 27-2 at 150-54). Instead, any inference that fatigue played a role in the accident is based on mere conjecture.

11

Boulevard at a 'normal speed.'" (Doc. # 26 at 10; Doc. # 27 at 3). As an initial matter, Hubbard testified that she "can't say for sure if [Harris] saw [Plaintiff] or not, because you would think if somebody did see her, he would either stop or accelerate to get away, … [s]o I don't know." (Doc. # 27-5 at 39). Additionally, Hubbard testified that Harris looked both ways at the intersection before rolling through the stop sign and that she does not know how Harris did not see Plaintiff because Plaintiff was wearing colorful clothes and a helmet. (Id. at 36).

Resolving all doubts and making all justifiable inferences in favor of Plaintiff, as is required at this stage in the litigation, Hubbard's testimony is sufficient to allow a jury to reasonably infer that Harris saw Plaintiff on her bicycle before "rolling" the stop sign and turning on to Bradford Boulevard. Therefore, a reasonable jury could conclude from the Rule 56 record that Harris had a conscious appreciation that rolling through the stop sign and turning the truck into the path of Plaintiff's bicycle would likely result in injury to Plaintiff. Moreover, Harris's familiarity with the Woodland Forest neighborhood combined with Hubbard's and Plaintiff's testimony that walkers, runners, and families with strollers frequently used the streets in the neighborhood, are sufficient at this stage in the litigation to allow a jury to reasonably infer that Harris knew that a strong possibility existed that someone may be put at risk of injury when he turned quickly onto Bradford Boulevard without stopping at the stop sign to look carefully for people on the road. *See Frederick*, 3 So.3d at 907 (citation omitted).

Plaintiff has presented sufficient evidence in the Rule 56 record to show that there are genuine issues of material fact regarding her wantonness claim. Therefore, Defendants are not entitled to summary judgment on Plaintiff's wantonness claim.

### B. Negligent and Wanton Entrustment

Plaintiff asserts a claim for negligence and wanton entrustment against Defendants. (Doc. # 2 at ¶ 34). To prove a negligent or wanton entrustment claim involving the entrustment of a vehicle to a driver, a plaintiff must show among other things that the driver was incompetent and that the owner of the vehicle knew, or should have known, of the driver's incompetence. *See Hetzel v. Fleetwood Trucking Co., Inc.*, 90 So.3d 180, 182 (Ala. 2012); *Prill v. Marrone,* 23 So.3d 1, 8 (Ala. 2009) (citing *Halford v. Alamo Rent–A–Car, LLC*, 921 So.2d 409, 412 (Ala. 2005) and *Mason v. New*, 475 So.2d 854, 856 (Ala. 1985)); *Edwards v. Valentine,* 926 So.2d 315, 321-22 (Ala. 2005).

Here, Plaintiff has not presented substantial evidence that Harris was an incompetent driver, much less that Defendants had knowledge of his incompetency. Indeed, Plaintiff did not oppose Defendants' motion for summary judgment on her negligent and wanton entrustment claim and concedes that the claim should be dismissed. (Doc. # 27 at 24). Because there is no genuine issue of material fact, Defendants are entitled to summary judgment on Plaintiff's negligent and wanton entrustment claim.

### C. Negligent and Wanton Hiring, Training, Supervision, and Retention

Alabama law recognizes claims for negligent and wanton hiring, training, supervision, and retention. *See Hetzel*, 90 So.3d at 182-83. As with a negligent or wanton entrustment claim, to prove a claim under Alabama law for negligent or wanton hiring, training, supervision, or retention, a plaintiff must demonstrate that the employee was incompetent and that the defendant knew, or should have known, that its employee was incompetent. *Southland Bank v. A&A Drywall Supply Co., Inc.*, 21 So.3d 1196, 1214-15 (Ala. 2008); *Voyager Ins. Companies v. Whitson*, 867 So.2d 1065, 1073 (Ala. 2003) (citing *Lane v. Central Bank of Alabama, N.A.*, 425

13

So.2d 1098, 1100 (Ala. 1983)); *Brown v. Vanity Fair Mills, Inc.*, 277 So.2d 893, 895 (Ala. 1973); *Sanders v. Shoe Show, Inc.*, 778 So.2d 820, 824 (Ala. Civ. App. 2000). For negligent or wanton hiring, training, supervision, or retention claims arising from car accidents involving a defendant's employee, a plaintiff must show that the employee was an incompetent driver. *See Jones Exp., Inc. v. Jackson*, 86 So.3d 298, 305 (Ala. 2010). "[T]he incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle*.*" *Halford v. Alamo Rent-A Car, LLC*, 921 So.2d 409, 413-14 (Ala. 2005).

Here, Plaintiff has not presented any evidence that Harris was an incompetent driver. Indeed, there is no evidence that Harris was involved in a traffic accident or received a citation for a moving violation prior to the accident at issue in this case. (Doc. # 26 at ¶ 7; Doc. # 27-1 at 86). Instead, the evidence shows that Harris's driving record was virtually spotless. (Doc. # 27-1 at 86). Additionally, the record shows that Harris had a valid commercial driver's license and medical examiner's certificate and that he completed a road test after he was hired by Schwan's Home. (Doc. # 26 at ¶¶ 5 & 6; Doc. # 27-2 at 133-34).

Plaintiff argues that evidence that Harris did not drive his route sequence correctly and had significant performance issues is substantial evidence of Harris's incompetence. (Doc. # 25 at 24-27). However, that evidence relates to Harris's ability as a salesman, not as a driver. That is, it does not indicate Harris's "demonstrated ability (or inability) to properly drive a vehicle." *Halford*, 921 So.2d at 413-14. As a result, it does not support a conclusion that Harris was an incompetent driver.

In support of her claim, Plaintiff also asserts that Harris's incompetence "caused him to rush through his daily sales route." (Doc. # 27 at 24). The Rule 56 Record does not support that bald assertion. Instead, the evidence shows that Harris refused to rush through his route and that

he only made 27 of his scheduled 114 stops on the day of the accident. (Doc. # 27-1 at 68; Doc. # 27-2 at 117-18). Moreover, that evidence does not indicate Harris's ability or inability to properly drive a vehicle, and it does not support a conclusion that Harris was an incompetent driver.

Because Plaintiff has failed to present any evidence that would support a conclusion that Harris was incompetent to drive a vehicle, there is no genuine issue of material fact relating to Plaintiff's negligent and wanton hiring, training, supervision and retention claim. Therefore, Defendants are entitled to summary judgment as to that claim.

### D. Negligent and Wanton Maintenance of Vehicle

Plaintiff asserts a separate negligence and wantonness claim against Defendants based on her allegations that Harris may have fled the scene of the accident "because the truck was negligently maintained." (Doc. # 2 at ¶ 45). Defendants moved for summary judgment on that claim on the grounds that "Plaintiff has failed to develop any evidence in support of her negligent/wanton maintenance claim." (Doc. # 26 at 12).

Plaintiff opposes the motion by arguing that the record shows that Harris complained about vehicle he was driving at the time of the accident, and she asserts there is "substantial evidence of mechanical defect in the truck [Harris] was driving at the time of the wreck." Specifically, Plaintiff cites Harris's October 13, 2011 complaint about the condition of the trucks and Harris's testimony that he complained about the trucks breaking down to support her claim. (Doc. # 27 at 28-29). That evidence, however, does not create a genuine issue of fact regarding the condition or maintenance of the truck on May 31, 2011, the date of the accident. Moreover, Harris's undisputed testimony establishes that his complaints about the trucks related to their refrigeration units, and that he had no concerns about the brakes or steering on the trucks. (Doc.

# 27-2 at 36, 81-82). In addition, there is no evidence in the Rule 56 record that could support an inference that a problem with the truck's condition or maintenance caused or contributed to the accident at issue.

Plaintiff has not presented substantial evidence that Defendants negligently or wantonly maintained the vehicle at issue, much less any evidence suggesting that any such negligence or wantonness caused Plaintiff's injuries. As a result, there is no issue of material fact relating to Plaintiff's negligent and wanton maintenance of vehicle claim. Therefore, Defendants are entitled to summary judgment as a matter of law on Plaintiff's claim that Defendants negligently or wantonly maintained the vehicle involved in the accident.

### E.    Claims Against Schwan's Sales and Schwan's Food

Plaintiff named three defendants in this action -- Schwan's Home Service, Inc., Schwan's Food Service, Inc., and Schwan's Sales Enterprises, Inc. -- and asserted all her allegations against the three defendants collectively. (Doc. # 2). Defendants have moved for summary judgment on all claims asserted against Schwan's Food and Schwan's Sales and supported its motion with an affidavit from a corporate attorney for The Schwan Food Company, the parent corporation of Schwan's Home and Schwan's Food. (Doc. # 26 at Exh. A).

#### 1.    Defendant Schwan's Sales Enterprises, Inc.

Schwan's Sales was not a legal entity on the date of accident because it became Schwan's Home in 2003. (Doc. # 26 at ¶ 3 & Exh. A, ¶ 4). Plaintiff concedes that Schwan's Sales "has no role in this litigation." (Doc. # 27 at 29). As a result, Defendants' motion for summary judgment on all of Plaintiff's claims against Schwan's Sales is due to be granted, and the claims against Schwan's Sales are due to be dismissed with prejudice.

### 2. Defendant Schwan's Food Services, Inc.

Defendants also argue that Plaintiff has no viable claims against Schwan's Food because Plaintiff's claims are all based on Defendants' vicarious liability for Harris's actions or inactions or on Defendants' ownership of the truck involved in the accident. (*See* Doc. # 26 at 15-16). To support their motion for summary judgment on Plaintiff's claims against Schwan's Foods, Defendants offered evidence in the form of affidavit testimony that Harris was never employed by Defendant Schwan's Food and that Schwan's Food did not own the truck involved in the accident. (Doc. # 26 at Exh. A, ¶ 6).

To counter that evidence, Plaintiff points to the following testimony from Harris's deposition:

> Q. I've got some questions for you today about your work for Schwan's Home Service or Schwan's Food Service or whichever Schwan's you work for.
>
> A. It's all one company.

(Doc. # 27-2 at 7). Harris's off-hand statement at the beginning of his deposition that Schwan's Food and Schwan's Home are "all one company" is not substantial evidence that Harris was employed by Schwan's Food or that the truck involved in the accident was owned by Schwan's Food. Harris testified in his personal capacity in his deposition, and not as a representative of either Schwan's Home or Schwan's Food. (*See* Doc. # 27-2). Additionally, there is no evidence apart from his employment as a driving salesman for Schwan's that Harris has any personal knowledge about Schwan's corporate structure or which Schwan's entity owned the truck he was driving on the day of the accident.

Based on the Rule 56 record, a jury could not reasonably find that Harris was employed by Schwan's Food or that Schwan's Food owned the truck involved in the accident. As a result,

there is no genuine issue of material fact regarding any of Plaintiff's claims against Schwan's Food. Therefore, Defendants' motion for summary judgment on Plaintiff's claims against Schwan's Food is due to be granted, and the claims against Schwan's Food are due to be dismissed with prejudice.

## IV. Conclusion

For the foregoing reasons, Defendants are entitled to summary judgment on (1) the negligent and wanton entrustment claim of Count II; (2) the negligent and wanton hiring, training, supervision, and retention claim of Count III; (3) the negligent and wanton maintenance of vehicle claim of Count VIII; and (4) all claims asserted against Defendants Schwan's Food Service, Inc. and Schwan's Sales Enterprises, Inc. Defendants' motion as to Plaintiff's wantonness claim against Defendant Schwan's Home Service, Inc. is due to be denied.

A separate order will be entered.

**DONE** and **ORDERED** this September 17, 2015.

$\hspace{5cm}$ /s/ R. David Proctor
$\hspace{5cm}$ **R. DAVID PROCTOR**
$\hspace{5cm}$ UNITED STATES DISTRICT JUDGE